FILED
2021 APR 12 PM 12:25
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RENNSLI CORP.,**<br><br>Plaintiff,<br><br>v.<br><br>**BRETT C. WINBERG, et al.,**<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00247-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiff Rennsli Corp.'s ("Rennsli") Motion for Leave to Amend Complaint.[2] The court held oral argument on March 23, 2021.[3] After taking the matter under advisement, the court now renders the following Memorandum Decision and Order.

Rennsli seeks leave to amend the complaint to add WP Holdings, LLC ("WP") as a defendant in this case. Rennsli filed the Motion to Amend after the Scheduling Order's deadline for amendment to add additional defendants had passed. Because Rennsli has not demonstrated good cause to alter the Scheduling Order, the Motion to Amend is DENIED.

---

[1] ECF No. 25.

[2] ECF No. 36.

[3] ECF No. 52.

## BACKGROUND

This action arises out of a claim for patent infringement brought by Rennsli, the assignee of U.S. Patent No. 7,959,693 (the "'693 Patent"), against a former distributor. Rennsli manufactures fuel additive products in tablet- and powder-based forms. It sells these products to distributors, who sell them under a variety of brand names. Combustion Technologies USA, LLC ("Combustion")[4] was one of the distributors of Rennsli's products and sold those products under the CleanBoost label. Rennsli alleges that Combustion developed its own "solid fuel additive products" made "pursuant to the composition and methods claimed in the '693 Patent" in an attempt to cut Rennsli out of the supply chain and increase profits under the CleanBoost label.[5] Rennsli represented that it had the Combustion product tested, and testing revealed a chemical composition of ferrocene and biphenyl, which constitute the proprietary composition of the '693 Patent.

Rennsli filed suit against Combustion for patent infringement on April 13, 2020. Combustion denies infringement and asserts that the fuel additive products in question are genuine Rennsli-products, not counterfeit Rennsli-products, that it "purchased directly from [Rennsli] for distribution" pursuant to their supply agreement.[6] A Scheduling Order was entered on June 8, 2020, which established September 11, 2020, as the deadline to amend pleadings and add parties.[7] On September 1, 2020, Rennsli was put on notice that WP might be an additional defendant when Combustion produced a purchase order identifying WP as a secondary distributor. On September 14, 2020, after

---

[4] The named defendants in this case are Combustion, Brett Winberg, and Boost Performance Products, Inc. The distinction among the three defendants is not relevant for the purposes of this motion, and they will be collectively referred to as "Combustion."

[5] ECF No. 2 at ¶¶ 20-21.

[6] ECF No. 39 at 2.

[7] ECF No. 27.

the deadline to add parties had lapsed, Rennsli asked Combustion to produce documents for WP.[8] A protracted meet and confer process then took place over a period of months.[9] On December 14, 2020, Rennsli, informally, sent Combustion a proposed amended complaint with a request to stipulate to amend the complaint to add WP.[10] Combustion declined. On December 23, 2020, the parties filed a joint motion for amended scheduling order, which altered several deadlines but did not change the deadline to either amend the pleadings or add parties.[11] Rennsli filed the instant Motion to Amend to add WP as a defendant on January 29, 2021—over four months after the amendment deadline.

### LEGAL STANDARD

Because Rennsli seeks leave to amend the complaint after the Scheduling Order's September 11, 2020 deadline for amending the pleadings, Rennsli's motion implicates both Fed. R. Civ. P. 15(a) and 16(b), and, thus, Rennsli must satisfy both standards to amend here. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). District courts in the Tenth Circuit have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a) when deciding a motion to amend that is filed beyond the scheduling order deadline. *See, e.g.*, *Storage Craft Tech. Corp. v. Persistent Telecom Sols., Inc.*, No. 2:14-CV-76-DAK, 2016 WL 3435189, at *8 (D. Utah June 17, 2016); *Roberts v. C.R. England, Inc.*, No. 2:12-CV-0302, 2013 WL 5275942, at *2 (D. Utah Sept. 18, 2013); *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. CIV-09-2626-KHV, 2010 WL 4004874, at *3-4 (D. Kan. Oct. 12, 2010); *Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D.

---

[8] ECF No. 36.

[9] After Rennsli's September 14 request for WP documents, the meet and confer intermittently evolved through a course of communications on September 16, October 5, November 12, and November 19. ECF No. 36 at ¶¶ 3-4.

[10] ECF No. 36 at ¶ 5.

[11] ECF Nos. 34, 35.

684, 687 (D. Colo. 2000). "Thus, when a motion to amend is filed beyond the scheduling order deadline, [the] Court will first determine whether the moving party has established 'good cause' within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion." *Carefusion 213,* 2010 WL 4004874, at *3. Only after determining that good cause has been established "will the Court proceed to determine if the more liberal Rule 15(a) standard for amendment has been satisfied." *Id.*

The focus of Rule 16(b) is on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. *Colorado Visionary*, 194 F.R.D. at 687.

> Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id.* (quotations and citation omitted). For example, Rule 16's good cause requirement may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. However, "[a] litigant's failure to assert a claim *as soon as he could have* is properly a factor to be considered in deciding whether to grant leave to amend." *Tesone v. Empire Mktg. Strategies*, No. 17-CV-02101-MEH, 2019 WL 8223285, at *2 (D. Colo. Jan. 17, 2019) (quotations and citation omitted). Indeed, the moving party must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins,* 315 Fed. App'x. 57, 61 (10th Cir. 2009) (citation omitted); *Colorado Visionary*, 194 F.R.D. at 687 ("Rule 16(b) erects a more stringent standard [than Rule 15], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." (citation omitted)). If the plaintiff knew of potential claims, but

4

simply failed to timely act, the claims are barred. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

If Rennsli satisfies Rule 16(b)'s good cause standard, it must then satisfy the standard for amendment of pleadings under Fed. R. Civ. P. 15. Under Rule 15, the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Refusing leave to amend is rare and generally justified only upon a "showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

## ANALYSIS

Because Rule 16 is a more rigorous standard than Rule 15, the court first considers whether Rennsli has satisfied Rule 16. As indicated below, Rennsli has not shown good cause in support of its Motion to Amend and, therefore, it is unnecessary to evaluate whether to grant leave to amend under Rule 15.

Rennsli fails to adequately explain why it did not move to amend the scheduling order to extend the amendment deadline before January 29, 2021. "[A] Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (internal quotations omitted). Consequently, the Court of Appeals for the Tenth Circuit has required a party seeking to meet Rule 16's good cause standard to adequately explain why the schedule could not have been met even by the plaintiff's diligent efforts. *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). Failure to provide such an explanation warrants denial of the motion to retroactively amend the scheduling order. *Id.*

5

Rennsli's explanation for the delay to amend the scheduling order is inadequate to meet the good cause requirement under Rule 16. Rennsli argues that because the documents identifying WP were not produced until September 1, 2020, Rennsli had little time to evaluate its claims against WP to determine whether to seek leave to amend. Rennsli appears to conflate the standard for when to amend a scheduling order with the standard to amend a complaint. Although related, the standard for amending a scheduling order and the standard for amending a complaint are distinct. Indeed, Rule 16 requires a showing of "good cause" whereas Rule 15 imposes a more liberal standard. *Colorado Visionary*, 194 F.R.D. at 687. When a plaintiff learns of facts and circumstances near or after the scheduling order's amendment deadline that would lead a reasonable person to believe that another entity may be involved in actionable conduct, then the plaintiff should move for an extension of the scheduling order's amendment deadline. During the extended amendment period, the plaintiff will be able to determine whether sufficient evidence exists to meet Rule 15's strictures to amend the complaint and add the new entity as a defendant. How soon the motion to extend an expired pleading-amendment deadline must be filed after learning this information will depend upon the facts and circumstances of each case.

Under the facts and circumstances of this case, Rennsli missed the time to seek an extension of the pleading-amendment deadline by months. Rennsli does not deny that it was on notice of WP's potential involvement on September 1, 2020,[12] but asserts that "before it could assert an infringement action against WP Holdings, it wanted to ensure that WP Holdings was not selling product defendants had purchased from Rennsli."[13] Rennsli was definitely on notice that WP was a potential

---

[12] ECF No. 42 at 2; ECF No. 52 at 1:56:00.

[13] ECF No. 42 at 2.

patent infringer on November 12, 2020, when lab results purportedly showed that WP was using the ingredients in Rennsli's patented formula and that WP's "product was not purchased from Rennsli."[14] In fact, after receiving these results, Rennsli drafted an amended complaint and began discussing with Combustion whether it would stipulate to amending the complaint. This clearly shows that Rennsli had more than just a reasonable belief based on the evidence that WP was involved in conduct actionable under the complaint. Notwithstanding, in its protracted evaluation of WP's possible claims, Rennsli either ignored or simply took for granted, the procedural requirements to preserve the opportunity to move to amend the complaint. For example, the parties filed a joint motion to amend the scheduling order on December 23, 2020, when Rennsli was certain to have knowledge of the deadlines, but even then, Rennsli never sought to extend the deadline to amend the pleadings. Although Rennsli appears to have possessed enough information to know that WP was potentially a defendant long before January 29, 2021, Rennsli either ignored the deadline or failed to recognize its importance neither of which is "good cause."[15] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (finding "untimeliness alone is an adequate reason to refuse leave to amend" when the movant fails to provide an adequate explanation for the delay). Therefore, Rennsli's motion to retroactively extend the expired pleadings-amendment deadline fails.

---

[14] *Id.*

[15] Given the length of the delay, awareness of the deadlines, and events within Rennsli's control, the neglect to preserve the right to amend is not excusable under Fed. R. Civ. P. 6(b). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993) (providing relevant factors in evaluating excusable neglect, including the length of the delay and whether the delay was within control of the movant)

## ORDER

Based on the foregoing, Rennsli's Motion for Leave to File Amended Complaint[16] is DENIED.

DATED this 12th day of April 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[16] ECF No. 36.